## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GENEVA PHARMACEUTICALS TECHNOLOGY CORP., | ) ) | **SUBPOENA** **IN A CIVIL CASE** |
| Plaintiff, | ) | |
| | ) | Case No.: Misc. _____ |
| -against- | ) | Case Pending: Southern |
| | ) | District of New York |
| BARR LABORATORIES, INC., | ) | |
| BRANTFORD CHEMICALS INC., | ) | |
| BERNARD C. SHERMAN, | ) | Case No. 98 Civ. 861 |
| APOTEX HOLDINGS, INC., | ) | Case No. 99 Civ. 3687 |
| APOTEX, INC., | ) | |
| and SHERMAN DELAWARE, INC., | ) | (Consolidated) |
| | ) | |
| Defendants. | ) | |
| | ) | |
| APOTHECON, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| BARR LABORATORIES, INC., | ) | |
| BRANTFORD CHEMICALS INC., | ) | |
| BERNARD C. SHERMAN, | ) | |
| APOTEX HOLDINGS INC., | ) | |
| APOTEX INC., | ) | |
| and SHERMAN DELAWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### BRANTFORD CHEMICAL INC.'S
### MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL
### E.I. DU PONT DE NEMOURS & COMPANY TO COMPLY WITH SUBPOENA

Brantford Chemicals Inc. ("Brantford") respectfully submits its Memorandum in

Support of its Motion to Compel E.I. du Pont de Nemours & Company ("E.I. du Pont") to

comply with the subpoena *duces tecum* issued to E.I. du Pont to produce documents

regarding its participation in the market for warfarin sodium crystalline clathrate. FED. R.

CIV. P. 45 (c)(2)(B). E.I. du Pont did not timely serve any objections to the subpoena, has

not made any effort to produce documents in response to the subpoena and has ceased

communicating with Brantford. Accordingly, Brantford brings this Motion to Compel.


I.    **BACKGROUND**

Brantford is a defendant in the lawsuit *Geneva Pharms. Tech. Corp. v. Barr

Labs., Inc., et al.*, Case No. 98 Civ. 861 (DLC), pending in the Southern District of New

York before Judge Cote. Brantford manufactures a pharmaceutical compound known as

warfarin sodium crystalline clathrate ("clathrate"). Clathrate is the primary ingredient

used to manufacture warfarin sodium tablets, an oral anti-coagulant medication.

Plaintiffs Geneva Pharmaceuticals Technology Corp.[1] and Apothecon, Inc.[2] are

respectively a manufacturer and marketer of warfarin sodium tablets. Plaintiffs allege

that Brantford wrongfully refused to sell clathrate to Geneva/Apothecon, which

prevented Geneva/Apothecon from entering the warfarin sodium market to compete with

Barr Laboratories, Inc. ("Barr"). Barr is another manufacturer of generic warfarin

sodium tablets and is a customer of Brantford. Geneva/Apothecon assert numerous

claims against Brantford, including that Brantford monopolized the market for the

clathrate raw material and that Brantford conspired with Barr to monopolize the market

for warfarin sodium tablets.

---

[1] Geneva Pharmaceuticals Technology Corporation ("Geneva") is the successor-in-interest to Invamed, Inc.

[2] Apothecon, Inc. ("Apothecon") is a wholly-owned subsidiary of the Bristol-Myers Squibb Company ("BMS") which is engaged in the business of developing, manufacturing and marketing generic pharmaceuticals.

The background facts and claims are spelled out in great detail in the district court's opinion granting summary judgment in favor of Defendants, *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 201 F. Supp. 2d 236 (S.D.N.Y. 2002), and the appellate court's reversal of that decision. 386 F.3d 485 (2d Cir. 2004).

Current and former subsidiaries of E.I. du Pont have been active participants in both the relevant markets involved in the underlying action. Until 2001, DuPont Pharmaceuticals, Inc. ("DuPont Pharma") manufactured and marketed warfarin sodium tablets under the brand name Coumadin®. E.I. du Pont sold the DuPont Pharma business (including the Coumadin® product line) to Bristol-Myers Squibb ("BMS") on June 7, 2001. BMS also happens to be the parent of Apothecon, one of the plaintiffs in this case. Based on Brantford's research, it appears that DuPont Pharma has been dissolved and no longer exists.

E.I. du Pont also owns a subsidiary known as Chemoswed A.B. ("Chemoswed"). Chemoswed manufactures clathrate. Chemoswed supplied clathrate to DuPont Pharma during the time that DuPont Pharma manufactured Coumadin® brand warfarin sodium tablets. Chemoswed now supplies clathrate to the current manufacturer of Coumadin®, BMS.

### Brantford's Subpoena to E.I. du Pont

Fact discovery in this case originally closed in 2000. Since then, this case has been up to the appellate court and back to the district court. The case is now set for trial in June 2006.

The district court recently reopened discovery to allow the parties an opportunity "to explore the marketplace conditions and other relevant events from the intervening months since discovery was closed [in 2000]." *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, No. 98 Civ. 861 (DLC), 99 Civ. 3607 (DLC), 2005 WL 2132438, at *5 (September 6, 2005 S.D.N.Y.) (Cote, J.) (attached as Exhibit A). Judge Cote recognized that marketplace positions of competitors in the alleged relevant markets has changed since discovery closed over five years ago. *Id.* at *6. Among the changes in the marketplace noted by Judge Cote was that "[Bristol-Myers Squibb], parent of Apothecon, has purchased the Coumadin brand." *Id.* at *6. Judge Cote recognized that new evidence has developed regarding the alleged barriers to entry into the marketplace. *Id.* at *5-6. Judge Cote concluded that "[f]airness requires the parties have an opportunity to explore the new environment through discovery so that any verdict that a jury returns reflects as closely as possible the realities of the marketplace." *Id.* at *7.

Consistent with the Order, Brantford issued a subpoena to E.I. du Pont on September 6, 2005 to update discovery and develop evidence regarding E.I. du Pont's (and its subsidiary Chemoswed's) actual and potential ability to manufacture and sell clathrate in the marketplace. *See* Affidavit of Carie-Megan A. Flood ("Flood Aff."), Exhibit 1. During the first round of discovery in the underlying litigation, on September

17, 1999, Brantford issued a subpoena to E.I. du Pont pertaining to Chemoswed's manufacture and supply of clathrate. *See* Exhibit B. On August 31, 2000, Brantford issued a subpoena to DuPont Pharma pertaining to marketing strategies for Coumadin®. *See* Exhibit C.

On October 20, 2000, Brantford and DuPont Pharma entered into a letter agreement to resolve the 1999 and 2000 subpoenas. *See* Exhibit D (Oct. 20, 2000 Letter Agreement). With respect to the document requests in the subpoenas, DuPont Pharma agreed to produce certain documents and Brantford agreed that the document production was sufficient to satisfy the subpoena. *Id.* As to the requirements in the subpoenas for deposition testimony, DuPont Pharma agreed to present a witness or an affidavit. *Id.* Pursuant to the terms of the letter agreement, DuPont Pharma provided the affidavit of John C. Budzinski, the Senior Director of Strategic Sourcing at DuPont Pharma. *See* Exhibit E (Affidavit of John C. Budzinski), filed separately under seal. The letter agreement also contained the following provision:

> If this case goes to trial, DuPont [Pharma] will present a
> witness at trial to testify to those facts set forth in the
> affidavit at an agreeable time during trial consistent with
> schedule set by the Court. Brantford agrees on its behalf,
> and on behalf of Barr, that no additional documents or
> testimony will be sought from DuPont [Pharma].

*See* Exhibit D (October 20, 2000 Letter Agreement).

Brantford's current subpoena to E.I. du Pont contains five document requests and is limited to the time period following the prior close of discovery in 2000. *See* Flood Aff., Ex. 1. E.I. du Pont did not timely serve Brantford with any objections to the subpoena. Over the course of the past several weeks, counsel for Brantford engaged in

several telephone conferences with a paralegal in the legal office of E.I. du Pont in an attempt to obtain E.I. du Pont's compliance with Brantford's subpoena. *See* Flood Aff., Exhibit 2 (10/25/05, 10/27/05, 11/14/05 letters from Carie-Megan Flood; 11/04/05 letter from Karla R. Murray). During the course of these discussions, counsel for Brantford provided to E.I. du Pont copies of the 1999 and 2000 subpoenas and the prior letter agreement between Brantford and DuPont Pharma. *See* Flood Aff., Ex. 2 (10/25/05 letter from Carie-Megan Flood).

E.I. du Pont has asserted that the letter agreement between Brantford and DuPont Pharma (which has been dissolved and no longer exists) precludes Brantford from obtaining discovery from E.I. du Pont with its current subpoena. *See* Flood Aff., Ex. 2 (11/04/05 letter from Karla R. Murray). Brantford advised E.I. du Pont that the letter agreement was specifically limited to DuPont Pharma and that the letter agreement does not preclude Brantford from issuing another subpoena to E.I. du Pont. *See* Flood Aff., Ex. 2 (11/14/05 letter from Carie-Megan Flood). E.I. du Pont ignored Brantford's letter, and to date, has ceased communicating with Brantford's counsel.

Brantford respectfully requests that this Court grant its motion and order E.I. du Pont to produce documents responsive to Brantford's subpoena.

## ARGUMENT

**II.   BY FAILING TO OBJECT TO BRANTFORD'S SUBPOENA, E.I. DU PONT WAIVED THE RIGHT TO OBJECT TO ENFORCEMENT OF THE SUBPOENA.**

In order to preserve its right to object to Brantford's subpoena, E.I. du Pont was required by the Federal Rules to serve Brantford with written objections 14 days after service of the subpoena.[3] FED. R. CIV. P. 45 (c)(2)(B). E.I. du Pont did not serve any objections by the due date, September 22, 2005. "[F]ailure to timely file an objection will result in a waiver of the right to object to enforcement of the subpoena and of the right to recover costs of production." *McCabe v. Ernst & Young, LLP*, 221 F.R.D. 423, 426 (D.N.J. 2004). E.I. du Pont, therefore, has waived any objections to the subpoena.

**III.   THE DOCUMENT REQUESTS IN BRANTFORD'S SUBPOENA ARE LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE REGARDING THE CLATHRATE AND WARFARIN SODIUM MARKETS.**

The same liberal standard governing civil discovery between parties to a lawsuit also applies to a non-party served with a subpoena under Federal Rule of Civil Procedure 45. *Cash Today of Texas, Inc. v. Greenberg*, No. Civ.A. 02-MC-77-GMS, 2002 WL 31414138, at *1 n. 4 (D. Del. Oct. 23, 2002) ("The reach of a subpoena issued pursuant to Fed.R.Civ.P. 45 is subject to the general relevancy standard applicable to discovery under Fed.R.Civ.P. 26(b)(1).") (A copy of the *Cash Today* decision is appended hereto as Exhibit F). The Federal Rules of Civil Procedure provide that:

---

[3] Brantford's subpoena was personally served upon E.I. du Pont on September 8, 2005. *See* Flood Aff., Ex. 1 (Affidavit of Process Server).

> Parties may obtain discovery regarding any matter, not privileged, that is
> relevant to the claim or defense of any party, . . . Relevant information
> need not be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1).  As shown below, the documents requested by Brantford fall

squarely within the proper scope of discovery.

> ### A.    E.I. du Pont's Role In The Clathrate Market Is Likely To Lead To The Discovery Of Admissible Evidence Regarding Plaintiffs' Claims That Brantford Monopolized The Clathrate Market.

Brantford requests that E.I. du Pont produce:

1.    All contracts between E.I. du Pont and BMS regarding bulk warfarin sodium USP.

2.    Documents sufficient to show the amount of bulk warfarin sodium USP manufactured by E.I. du Pont for each year.

3.    Documents sufficient to show E.I. du Pont's capacity to manufacture bulk warfarin sodium USP for each year.

4.    Documents sufficient to show E.I. du Pont's sales of bulk warfarin sodium USP to purchasers other than BMS for actual or anticipated use in the manufacture of warfarin sodium tablets sold in the United States.

*See* Flood Aff., Ex. 1.

All of these document requests are aimed at seeking information relating to E.I. du

Pont's actual and potential ability to manufacture and sell clathrate.  ("Bulk warfarin

sodium USP" is simply another name for clathrate.).  These documents are relevant to

several issues related to Plaintiffs' claims against Brantford, including the existence of

alleged barriers to entry into the clathrate market, the availability of other clathrate

suppliers, and Brantford's alleged monopoly power in the clathrate market (which

assumes that Brantford had the power to exclude other clathrate suppliers or raise clathrate prices). *See, e.g, Geneva*, 386 F.3d at 504 (stating that there is a factual dispute over the availability of clathrate); *see also id.* at 502 (concluding that there was a factual dispute over whether Brantford was the only supplier of available clathrate).

In particular, E.I. du Pont's contracts with BMS for the sale of clathrate (Req. No. 1) may lead to the discovery of admissible evidence regarding E.I. du Pont's willingness and ability to supply clathrate and also may lead to evidence of the custom and practice of using written supply contracts for the purchase of the clathrate. *Geneva*, 201 F. Supp. at 281-85. The amount of clathrate manufactured by E.I. du Pont (Req. No. 2) and E.I. du Pont's capacity to manufacture additional clathrate (Req. No. 3) are relevant to Brantford's share of the clathrate market and market power. *Id.* at 271. E.I. du Pont's sales of clathrate to other potential manufacturers of warfarin sodium tablets (Req. No. 4) is relevant to E.I. du Pont's willingness and ability to supply clathrate and to the availability of other clathrate suppliers in the marketplace.

> **B.    E.I. du Pont's Dealings With Other Actual And Potential Manufacturers Of Warfarin Sodium Tablets Is Likely To Lead To The Discovery Of Admissible Evidence Regarding Plaintiffs' Claims That Brantford And Barr Monopolized The Warfarin Sodium Market.**

Brantford's subpoena also calls for E.I. du Pont to produce:

> 5.    Documents referring to any actual or potential Drug Master File Authorizations or "Letters of Access" to FDA regarding bulk warfarin sodium.

*See* Flood Aff., Ex. 1.

This request is likely to lead to the discovery of admissible evidence regarding the existence of other actual or potential competitors in the warfarin sodium market. *Geneva*, 2005 WL 2132438, at *6 ("Potential entrants in a market must be considered in the relevant market analysis."). This request too may lead to evidence regarding other warfarin sodium tablet manufacturers because manufacturers are required to obtain Drug Master File Authorizations or Letters of Access from their raw material suppliers before seeking approval to market drug in the United States. *Geneva*, 201 F. Supp. 2d at 247. This request also may lead to evidence regarding the custom and practice in the industry. Plaintiffs claim that it is the "custom and practice" of pharmaceutical manufacturers to rely on a supplier's Drug Master File Authorization or Letter of Access in lieu of a detailed written supply agreement; Brantford disputes that assertion. *Id.* at 282, 289.

## IV. THE LETTER AGREEMENT BETWEEN DUPONT PHARMA AND BRANTFORD DOES NOT PRECLUDE BRANTFORD FROM OBTAINING DISCOVERY FROM E.I. DU PONT WITH ITS CURRENT SUBPOENA.

As explained above, Brantford and DuPont Pharma entered into a letter agreement to resolve Brantford's 1999 and 2000 subpoenas. E.I. du Pont now claims that the letter agreement prevents Brantford from obtaining discovery from E.I. du Pont with its current subpoena. E.I. du Pont claims "that the agreement stated that the documents produced in that case were sufficient and were all that would ever be produced." *See* Flood Aff., Ex. 2 (11/04/05 letter from Karla R. Murray).

The letter agreement does not prohibit Brantford from enforcing its current subpoena to E.I. du Pont. First of all, the letter agreement was specifically between Brantford and DuPont Pharma; E.I. du Pont was not party to the agreement. DuPont Pharma, the party to the agreement, has been dissolved and no longer exists. Moreover, the agreement relates to the satisfaction of the 1999 and 2000 subpoenas and the sufficiency of DuPont Pharma's response to those subpoenas.

The provision upon which E.I. du Pont relies relates to, and is contingent upon, DuPont Pharma producing a witness to testify at trial. The witness contemplated under the agreement was John C. Budzinski, the Senior Director of Strategic Sourcing for DuPont Pharma. Mr. Budzinski is not employed by either DuPont Pharma (which has dissolved) or BMS (which acquired the DuPont Pharma business). Counsel for Apothecon (the BMS unit which is a plaintiff in this case) has informed Brantford's counsel that they do not represent John C. Budzinski in any capacity and do not know where he is. DuPont Pharma does not exist to live up to its end of the letter agreement to present a witness at trial.

In any event, circumstances have changed considerably in the more than five years that have elapsed since the prior subpoenas and letter agreement, as Judge Cote recognized when allowing the parties to re-open discovery to bring the factual record up to date. The district court entered summary judgment in 2002, the appellate court reversed in 2004, and the case is set to be tried in 2006. The marketplace has changed dramatically in the interim. Not the least of these changes involves the sale of the DuPont Pharma business to BMS and the dissolution of DuPont Pharma. No one could

11

have anticipated that six years would elapse between discovery and trial and that the participants in the marketplace would go through such radical transformation. The facts provided by DuPont Pharma in 2000 need to be updated so "any verdict that a jury returns reflects as closely as possible the realities of the marketplace." *Geneva*, 2005 WL 2132438, at *7.

## CONCLUSION

For all of the foregoing reasons, Brantford requests that its motion to compel be granted and that the Court order E.I. du Pont to produce the documents enumerated in Brantford's subpoena.

Dated: December 6, 2005

Respectfully submitted,

Diane J. Bartels (DE Bar No. 2530)
1807 North Market Street
Wilmington, DE 19802-4810
Telephone: (302) 656-7207
Fax: (302) 656-7208

Michael. J. Gaertner (MG-4713)
John F. Kloecker (JK-9518)
LORD, BISSELL & BROOK LLP
115 South LaSalle Street
Chicago, IL 60603
Telephone: (312) 443-1722
Fax: (312) 896-6722

David G. Greene (DG-4163)
LORD, BISSELL & BROOK LLP
885 Third Avenue, 26th Floor
New York, New York 10022
Telephone: (212) 812-8340
Fax: (212) 947-1202

Attorneys for Defendant
Brantford Chemicals Inc.